## BERMAN'S JEWELRY STORE, Inc. v. UNITED STATES.

No. 6412.

United States Court of Appeals
Fourth Circuit.

Argued June 19, 1952.

Decided Sept. 9, 1952.

W. M. Drennen, Charleston, W. Va. (C. W. Moxley and Jackson, Kelly, Morrison & Moxley, Charleston, W. Va., on brief), for appellant.

I. Henry Kutz, Special Asst. to the Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen. A. F. Prescott and Paul O'Donoghue, Special Assts. to the Atty. Gen. and A. Garnett Thompson, U. S. Atty., Charleston, W. Va., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

The appellant, Berman's Jewelry Store, Inc., of Beckley, West Virginia, brought its action in the district court for the recovery of Federal Retailers' Excise Taxes which it alleged had been illegally collected from it for the years 1945 and 1946, and from an adverse decision in that court it has appealed.

The appellant is one of nine stores located in different cities and towns in the State of West Virginia, each a separate corporation, but all having the same stock ownership and general management, and all carrying on a retail jewelry business. A large part of the merchandise sold by appellant is subject to the Retailers' Excise Tax imposed on jewelry and kindred items, 26 U.S.C.A. § 2400, and which for the years in question was 20 per cent of the price at which the article was sold. The appellant sold its merchandise both for cash and on credit. In case of a cash sale the customer paid what the appellant calls the "listed price" of the article purchased, plus the Federal excise tax, plus the West Virginia State sales tax, and the sales slip given the customer itemized these charges. These cash sales have no part in the present controversy.

A substantial part of appellant's business was on credit whereby the customer paid some part of the price of the article purchased in cash and agreed to pay the balance in installments. On these installment sales it was the uniform practice for the customer to enter into a conditional sales contract which set out the manner in which the purchase price was to be paid. On all credit sales an additional charge was added to the listed price of the article. This was termed by the appellant as a "finance charge" and was in all cases ten per cent of the listed price of the article purchased. No interest as such was charged. In the contract there were listed

the items going to make up the total with which the customer was charged, these including the listed price of the article, the Federal excise tax, the State sales tax, and the so-called "finance charge". The contract also set out the amount of the cash payment and the amounts and number of the installment payments, which varied with individual transactions. Each of these installment contracts contained a provision as follows:

"There is a discount of $...... if your account is paid in full by...... ....."

In filling out the blanks in this provision of the contract the amount of the discount was the finance charge set out in the contract; the date was usually three months regardless of the length of time the contract was to run.

In the years 1945 and 1946 the appellant duly filed with the Collector of Internal Revenue the required returns showing the Federal Excise Tax due on its sales. In computing the tax due on its installment sales the appellant included in the basis for computation of the tax the amount of the West Virginia sales tax and the amount of the "finance charge". In other words the appellant paid excise taxes based on an amount made up of the listed price of the article, plus the West Virginia sales tax, plus the "finance charge". Thereafter the appellant, alleging that it had been in error in including the amount of the State sales tax and the finance charge in the basis for computing the taxes, filed claim for refund of such portion of the taxes paid as had been computed on these sums.

The Commissioner of Internal Revenue agreed that the West Virginia state sales tax which the taxpayer had collected from its customers should not have been included in the amount on which the Federal excise tax was calculated and the claim for refund was granted in so far as it related to this item. However, the Commissioner denied any refund as to that part of the Excise Tax attributable to including the finance charge in the basis for computing the tax, on the ground that it was not a true finance charge but rather

was a part of the price at which the article was sold and was properly included in the amount on which the tax was computed. The taxpayer thereafter brought its action in the District Court for the amounts involved, namely, $1,095.65 for the year 1945 and $738.11 for 1946. The District Court agreed with the view that the so-called finance charge was properly included in the basis for computing the Federal excise tax and dismissed the action. This appeal followed.

The sole question involved is whether the "finance charge" made by the appellant on installment sales is a part of the purchase price of the article sold and thus to be included in the amount on which the Federal excise tax is computed. The District Court in dismissing the action held "that the additional amount required to be paid by the purchaser in the case of credit sales by plaintiff, being the so-called "finance charge", is a part of the price for which the article is sold, that the Federal excise tax paid by plaintiff thereon was required to be so paid and that it is not recoverable by the plaintiff." With this conclusion of the District Court we agree.

The statutes to be considered are Sect. 2400 of the Internal Revenue Code, 26 U.S.C.A. § 2400, which imposes the excise tax on jewelry; and Sect. 2403(c) which provides:

"(c) In determining, for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge. A transportation, delivery, insurance, installation, or other charge (not required by the foregoing sentence to be included) shall be excluded from the price only if the amount thereof is established to the satisfaction of the Commissioner, in accordance with the regulations. There shall also be excluded, if

stated as a separate charge, the amount of any retail sales tax imposed by any State or Territory or political subdivision of the foregoing, or the District of Columbia, whether the liability for such tax is imposed on the vendor or the vendee."

The appellant urges that its finance charge is specifically excluded from the tax base by the language of the quoted statute. It is contended that it is covered by the term "other charge" which, along with charges for transportation, delivery, insurance and installation, is excluded from the price when the amount thereof is satisfactorily established. This construction of the statute is one which we cannot accept. The words "other charge" as used in the statute are obviously intended to refer to charges of the same general nature as those enumerated and which arise from some service or undertaking by the vendor imposing upon him an expense not compensated for by the purchase price of the article sold.

■■ There can be, of course, such a thing as a "finance charge" or "carrying charge" on installment sales and they are not unusual. And where such a charge is confined to and is truly representative of the added expense imposed upon the vendor by installment selling (as distinguished from cash sales) it is not to be included in the tax base. Such a charge may properly include lawful interest on the deferred portion of the purchase price, the cost of the book-keeping necessary to keep the records of such sales, and any other expense directly attributable to the fact that payment is to be made in installments instead of in cash.

But it is obvious that in fixing the amount which a customer is to pay on a credit sale a merchant cannot arbitrarily name any amount that he chooses as a "finance charge" or "carrying charge" and thereby exclude it from the tax base. This would open unlimited opportunities for evasion of the tax.

The so-called finance charge here bears no relation to a true finance or carrying charge. It is conceded that no interest as such was charged on the deferred payments, and regardless of how designated it is plain that this charge did not represent interest. Its amount was always ten per cent of the listed price without regard to the amount of the deferred payments or the length of time over which the installments were to run. For example, if the listed price of an article was $100 the "finance charge was always $10. It was the same whether the purchaser paid $75 in cash and $25 in installments or whether the method of payment was just the reverse. It was the same whether the contract called for payment to be made in two monthly installments or in twelve. This latter fact also indicates that actual book-keeping costs did not enter into determining the amount of the "finance charge"—something which is further shown by the practice of remitting the entire charge if the deferred purchase money was paid in full within three months.

It is of some significance that although there are nine stores having common ownership with appellant all of which sell on the installment plan, the "finance charge" is made at only four of these stores and these are situated in mining communities where admittedly the extension of credit involves greater risk of loss than at the other five stores. If the charge in question was intended as a true carrying charge, involving interest, book-keeping costs and similar items, it could be expected to be made on installment sales at all the stores. That it is made only at those stores which show more than normal loss from the extension of credit indicates that it is an increase in price to make allowance for the additional risk.

It is clear, we think, that the so-called "finance charge" is not such a charge as is to be excluded from the tax base as representing the true cost of carrying the installment payment. On the contrary, we consider it to be a part of the price charged for the goods when sold on installments and being ten per cent greater than when sold for cash. The true situation is not denied, but rather confirmed, by the fact that the customer can obtain a cancellation or remission of the finance

charge by an early payment of his account in full. In this respect the appellant's transactions are essentially the same as the common practice of selling merchandise to be paid for by a named date, but with a discount for earlier payment.

If the customer here pays up all of his installments in three months the appellant cancels the finance charge and collects only what it calls the "listed price". If the purchaser fails to take advantage of his opportunity for the discount he is compelled to pay the larger sum which he agreed to pay, and which is ten per cent greater than if he had bought for cash. But in either case the tax is paid only on the amount which is actually collected.

Stated another way, it may be said that the appellant had two prices on articles sold on credit. If the purchaser paid in full by the end of three months (which meant in many cases anticipating his installment payments) the appellant collected only what it termed the "listed" price. If the customer extended his credit beyond three months he was compelled to pay a sum which was ten per cent greater. But in either event the amount collected was that at which the article was sold to him.

The judgment of the District Court is affirmed.

Affirmed.